1
2
3
4
5
6
7
8

# IN THE UNITED STATES DISTRICT COURT

9

## FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  TERESA ARRES, et al.,                     CASE NO. CV F 10-1628 LJO SMS

12              Plaintiff,                     **ORDER ON DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS**

13      vs.                                    (Doc. 12, 13.)

14  THE CITY OF FRESNO, et al.,

15              Defendants.
                                    /
16

17                              **INTRODUCTION**

18          Defendants City of Fresno ("City"), its police department and several of its peace officers seek

19  to dismiss as insufficiently pled and legally barred plaintiffs' excessive force, deliberate indifference for

20  medical care, *Monell*, and California statutory and tort claims.  Plaintiffs respond that defendants "raise

21  no real question" to challenge their claims.  This Court considered defendants' F.R.Civ.P. 12(b)(6)

22  motion on the record without a hearing, pursuant to Local Rule 230(g).  For the reasons discussed below,

23  this Court DISMISSES plaintiffs' claims.

24                              **BACKGROUND**[1]

25                               **Summary**

26          This action arises out of the fatal police shooting of Lonnie Graham ("Mr. Graham").  Plaintiff

27  ───────────────

28          [1]    The factual recitation is derived generally from plaintiff's operative complaint ("complaint"), the target of defendants' challenges.

Teresa Arres ("Ms. Arres") is Mr. Graham's surviving mother and alleged personal representative of Mr. Graham's estate. Benicia Fuentes ("Ms. Fuentes") is the guardian ad litem of Mr. Graham's minor children, plaintiffs L.G. and J.G.[2]

Plaintiffs pursue claims against the City, the Fresno Police Department ("Department"), City Police Chief Jerry Dyer ("Chief Dyer"), and City police officers Alfonso Castillo ("Officer Castillo") and Joshua Bowling ("Officer Bowling").[3]

## Mr. Graham's Fatal Shooting

At around 12 p.m. on September 23, 2009, police officers surrounded the Fresno home of Celeste Rodriguez ("Ms. Rodriguez") where Mr. Graham was staying. Police officers contacted Ms. Rodriguez outside her home, threaten her with weapons and demanded that she call Mr. Graham to come out the back door.

Ms. Rodriguez directed by cell phone her 15-year-old son who was inside the home to instruct Mr. Graham to come out the back door. Ms. Rodriguez' son handed the cell phone to Mr. Graham.

Mr. Graham exited the back door and was instructed to turn around with his hands in the air. Mr. Graham complied with the officer's instructions and turned around to face the home's back door with his hands in the air, holding the cell phone in his right hand.

Although Mr. Graham complied with their instructions, officers fired multiple times from multiple angles to strike Mr. Graham in the back of his head, arms, shoulders, torso and back. Mr. Graham did not provoke the officers at any time.

## Government Claims

Pursuant to the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq., Mr. Graham's estate submitted an October 2, 2009 claim to the City to state that "Fresno Police Officers shot and killed an unarmed person." The City's October 19, 2009 Notice of Insufficiency of Claim states that the "claim is insufficient in that it fails to meet the requirements of California Government Code Section 910 or 910.2" by failing to provide the "**date**, place and other circumstances

---

[2]   Ms. Arres, Ms. Fuentes, L.G. and J.G. will be referred to collectively as "plaintiffs."

[3]   The City, Department, Chief Dyer and Officers Castillo and Bowling will be referred to collectively as "defendants."

1  of the occurrence or transaction which gave rise to the claim asserted."  (Bold in original.)

2      Mr. Graham's estate submitted a November 5, 2009 amended claim to the City to state that "[o]n

3  September 23, 2009, Officers Josh Bowling and Alphonso Castillo shot and killed Lonnie Graham who

4  was unarmed at the time."  The City's January 26, 2010 notice rejected the claim and warned: "You

5  have, subject to certain exceptions, only six (6) months from the date this notice was personally

6  delivered or deposited in the mail to file a court action on this claim."

7      The City notes that no government claims were filed by or on behalf of Ms. Arres or Ms. Fuentes

8  as L.G. and J.G.'s guardian ad litem.

9  **Plaintiffs' Claims**

10     The complaint, filed September 9, 2010, alleges that Mr. Graham's "death was a foreseeable

11  harm resulting from defendant' [sic] failure to exercise duty of care owed to decedent, by using

12  excessive and deadly force against the decedent."  The complaint alleges federal civil rights and

13  California statutory and tort claims, which will be addressed below.  The complaint seeks recovery for

14  plaintiffs' emotional distress and loss of consortium and for Mr. Graham's wrongful death, pain and

15  suffering, and funeral and burial expenses.  The complaint also seeks to recover punitive damages and

16  attorney fees.

17  **DISCUSSION**

18  **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

19     Defendants raise numerous legal challenges to seek F.R.Civ.P. 12(b)(6) dismissal of plaintiffs'

20  claims.[4]

21     A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

22  forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

23  of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

24  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

25  _____

26      [4]     Defendants seek to strike certain of the complaint's claims under F.R.Civ.P. 12(f).  However, defendants'
    motion in entirety will be analyzed under F.R.Civ.P. 12(b)(6) standards given the recent decision of *Whittlestone, Inc. v.*

27  *Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010) ("We therefore hold that Rule 12(f) does not authorize district courts to
    strike claims for damages on the ground that such claims are precluded as a matter of law.") As such, this Court will address

28  defendants' challenges and plaintiffs' claims under F.R.Civ.P. 12(b)(6) standards.

1  support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

2  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where

3  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

4  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

5  *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

6  In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

7  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

8  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

9  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

10  true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

11  *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court

12  "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel.*

13  *Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the

14  [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways

15  that have not been alleged."  *Associated General Contractors of California, Inc. v. California State*

16  *Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt

17  to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd.*

18  *v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

19  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

20  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

21  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

22  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

23  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

24  plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan Marketing*

25  *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either

26  direct or inferential allegations respecting all the material elements necessary to sustain recovery under

27  some viable legal theory."  *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

28  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

4

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

5

1        For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the

2   complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).

3   Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston*

4   *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle*, 290 F.Supp.2d at 1162, n. 2.   In addition, a

5   "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to

6   the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

7   authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.

8   2006).   A court may treat such a document as "part of the complaint, and thus may assume that its

9   contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342

10   F.3d 903, 908 (9th Cir.2003).   Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6)

11   motion by deliberately omitting reference to documents upon which their claims are based." *Parrino*

12   *v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[5]   A "court may disregard allegations in the complaint

13   if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v.*

14   *Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*,

15   815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken of a fact to show that a

16   complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245

17   F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir.

18   1997).   A court properly may take judicial notice of matters of public record outside the pleadings'" and

19   consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649

20   (9th Cir. 1988) (citation omitted).

21        With these standards in mind, this Court turns to defendants' challenges to plaintiffs' claims.

22             **Department As A Proper Defendant**

23        The complaint alleges multiple claims under 42 U.S.C. § 1983 ("section 1983").   Defendants

24   argue that the Department is not a proper defendant subject to a section 1983 claim.

25        Defendants are correct that the Department is an improperly named defendant.   Plaintiffs offer

26   

27       [5]       "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document

28   in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

no meaningful resistance to the Department's dismissal.  The term "persons" under section 1983 encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities. *Vance v. County of Santa Clara*, 928 F.Supp. 993, 995-996.  However, the term "persons" does not encompass municipal departments. *Vance*, 928 F.Supp. at 996.  "Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality." *Stump v. Gates*, 777 F.Supp. 808, 816 (D.Colo.1991).

The Department is not subject to the complaint's section 1983 claims which comprise the complaint's first through seventh claims.

**Official Capacity Claims Against Chief Dyer And Officers Castillo And Bowling**

Defendants seek to dismiss the section 1983 claims against Chief Dyer and Officers Castillo and Bowling in their official capacities given that the City is a defendant to render Chief Dyer and Officers Castillo and Bowling as "redundant."

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018 (1978).  The U.S. Supreme Court has further explained:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . .  Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." . . . As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099 (1985) (citations omitted).

An official capacity action is not against the public employee personally, "for the real party in interest is the entity." *Graham*, 473 U.S. at 166, 105 S.Ct. 3099.  "An official capacity suit against a municipal officer is equivalent to a suit against the entity." *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff,* 533 F.3d 780, 799 (9th Cir. 2008).

Local government officials sued in their official capacities are "persons" under section 1983 in cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018.  "For this reason, when both an officer and the local government entity are named in a

1    lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may

2    be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance*, 928 F.Supp. at

3    996). "Section 1983 claims against government officials in their official capacities are really suits

4    against the governmental employer because the employer must pay any damages awarded." *Butler v.*

5    *Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002).

6    "[I]t is no longer necessary or proper to name as a defendant a particular local government

7    officer acting in official capacity." *Luke*, 954 F.Supp. at 204. As the district court in *Luke*, 954 F.Supp.

8    at 204, explained:

9
10
11
> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

12    Defendants are correct that Chief Dyer and Officers Castillo and Bowling are subject to the

13    complaint's section 1983 claims in their individual capacities only. As such, dismissal of the section

14    1983 claims against Chief Dyer and Officers Castillo and Bowling in their official capacities is

15    warranted.

16    **<u>Punitive Damages Against The City</u>**

17    Defendants contend that the City is not subject to punitive damages "unless expressly authorized

18    by statute."

19    Generally, punitive damages are not allowed against a municipality unless expressly authorized

20    by statute. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-260, 101 S.Ct. 2748 (1981)

21    ("Judicial disinclination to award punitive damages against a municipality has persisted to the present

22    day in the vast majority of jurisdictions.") A "municipality is immune from punitive damages under 42

23    U.S.C. § 1983." *Fact Concerts*, 453 U.S. at 271, 101 S.Ct. 2748.

24    Under California Government Code section 818, a public entity, like the City, is not subject to

25    punitive damages. "California Government Code § 818 bars any award of punitive damages against a

26    public entity." *Westlands Water Dist. v. Amoco Chemical Co.*, 953 F.2d 1109, 1113 (9th Cir. 1991).

27    As such, the complaint's punitive damages claims against the City fails.

28    / / /

**<u>Excessive Force</u>**

The complaint's (first) section 1983 claim alleges: "Defendant's above-described conduct violated decedent's right as provided for under the Fourth Amendment to the United States Constitution to be free from excessive force and/or arbitrary and/or unreasonable use of deadly force against him." The claim identifies no particular defendant, and defendants presume that Mr. Graham's estate pursues the claim against all defendants.

***Section 1983 Requirements***

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

 "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 813.  "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

***Personal Fourth Amendment Rights***

Based on the complaint's limited allegations, defendants challenge Ms. Arres' ability to pursue an excessive force claim for Mr. Graham's estate.

"Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. U.S.*, 394 U.S. 165, 174, 89 S.Ct. 961 (1969).  "[O]nly the

person whose Fourth Amendment rights were violated can sue to vindicate those rights." *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998).

A "section 1983 claim that accrued before death survives the decedent when state law authorizes a survival action as a 'suitable remed[y] . . . not inconsistent with the Constitution and laws of the United States.'" *Smith v. City of Fontana*, 818 F.2d 1411, 1416 (9th Cir. 1987) (quoting 42 U.S.C. § 1988), *overruled on other grounds*, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action." *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369 (9th Cir. 1998). "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Moreland*, 159 F.3d at 369.

Under California law, "a cause of action for . . . a person is not lost by reason of the person's death, but survives . . ." Cal. Code Civ. Proc., § 377.20(a). California Code of Civil Procedure section 377.30 addresses who may pursue a survival action for a decedent:

> A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to [the California Probate Code] . . ., and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest.

California Probate Code section 58(a) defines "Personal representative" as "executor, administrator, administrator with the will annexed, special administrator, successor personal representative, public administrator acting pursuant to Section 7660, or a person who performs substantially the same function under the law of another jurisdiction governing the person's status."

Defendants note that the complaint identifies Ms. Arres as Mr. Graham's surviving mother and personal representative of his estate but fails to indicate whether she is the executrix or administrator of Mr. Graham's will or whether Mr. Graham died intestate. Defendants continue that if Ms. Arres is not the executrix or administrator of Mr. Graham's estate, she is not Mr. Graham's personal representative to render L.G. and J.G. as Mr. Graham's superior intestate heirs under the California Probate Code section 6402(b) and thus the proper parties to pursue Mr. Graham's Fourth Amendment

10

1  survival claim.  Defendants conclude that without more information, only L.G. and J.G., through

2  guardian ad litem Ms. Fuentes, are able to pursue a Fourth Amendment survival claim.

3       Plaintiffs respond with Ms. Arres' declaration that there is no proceeding to administer Mr.

4  Graham's estate and that Ms. Arres is Mr. Graham's successor in interest under California Code of Civil

5  Procedure section 377.11 which defines "decedent's successor in interest" as "the beneficiary of the

6  decedent's estate or other successor in interest who succeeds to a cause of action."  Plaintiffs argue that

7  Ms. Arres' declaration satisfies California Code of Civil Procedure section 377.32 to qualify her as Mr.

8  Graham's successor in interest.

9       The record remains unclear as to Ms. Arres' status to pursue a Fourth Amendment survival claim

10  for Mr. Graham as personal representative or otherwise.  If Mr. Graham's estate proceeds intestate, L.G.

11  and J.G. appear as heirs superior to Ms. Arres to warrant that they pursue a Fourth Amendment survival

12  claim through Ms. Fuentes.  As such, plaintiffs are granted leave to allege facts as to whether Ms. Arres

13  or L.G. and J.G., through Ms. Fuentes, are entitled to pursue a survival action for Mr. Graham.

14  **Deliberate Indifference To Mr. Graham's Medical Needs**

15       The complaint's (second) section 1983 deliberate indifference to medical needs claim alleges that

16  Mr. Graham "was entitled to receive necessary medical attention while in care and custody" of the

17  Department and unidentified "defendants" "acted under the color of state law to deprive [Mr. Graham]

18  of urgently needed medical attention in violation of his rights, under the Due Process Clause of the

19  Fourteenth Amendment."  Defendants presume that all plaintiffs pursue the medical deliberate

20  indifference claim against all defendants.

21       Defendants fault the complaint's absence of facts to demonstrate Mr. Graham's "medical needs,"

22  "how medical attention was deprived," or that "Defendants acted with deliberate indifference to those

23  medical needs."

24       Plaintiffs respond that "defendants are adequately appraised [sic] of the facts giving raise [sic]

25  you [sic] this cause of action."

26       A pretrial detainee's claim of failure to provide care for serious medical needs is analyzed under

27  the substantive due process clause of the Fourteenth Amendment.  *Simmons v. Navajo County, Az.*, 609

28  F.3d 1011, 1017 (9th Cir. 2010); *Lolli v. County of Orange*, 351 F.3d 410, 418-419 (9th Cir. 2003); *see*

11

*Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9ᵗʰ Cir. 2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872 (2003).  "With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'"  *Gibson*, 290 F.3d at 1187 (quoting *Carnell v. Grimm*, 74 F.3d 977, 979 (9ᵗʰ Cir. 1996)).  "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'"  *Gibson*, 290 F.3d at 1187 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994)).

The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9ᵗʰ Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a [detainee's] pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).  Deliberate indifference may be manifested when officials "deny, delay or intentionally interfere with medical treatment." *Jett*, 439 F.3d at 1096 (citing *McGuckin* 974 F.2d at 1060 (internal quotations omitted)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  Indifference to "medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980).  Under the deliberate indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.  "But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a [detainee's] serious medical needs on the basis of either his action or his inaction." *Gibson*, 290 F.3d at 1188 (alteration in original).  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need

1    in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

2         Defendants criticize the medical deliberate indifference claim's sole "conclusory allegation that

3    Defendants deprived [Mr. Graham] of urgently needed medical attention" given the lack of clarity "what

4    actions constituted a deprivation of medical attention." Defendants continue that the complaint fails to

5    allege their deliberate indifference to Mr. Graham's serious medical needs given its failure to identify

6    his medical needs and defendants' "acts of deliberate indifference."

7         Defendants are correct. The complaint lacks allegations that any defendant knew of and

8    disregarded an excessive risk to Mr. Graham's medical needs. Although the complaint's allegations give

9    rise to an inference that his gunshot wounds were his serious medical needs, there are no alleged facts

10   that defendants ignored them or failed to summon medical attention. There are no allegations of

11   defendants' purposeful acts or failure to respond to Mr. Graham's medical needs. Plaintiffs meekly

12   argue that they should be granted leave to amend which this Court construes as their concession that

13   medical indifference claim fails.

14        The medical indifference claim is subject to dismissal. This Court reluctantly grants plaintiffs

15   leave to amend the claim given absence of plaintiffs' meaningful support for the claim.

16                                   **Conspiracy**

17        The complaint's (third) 42 U.S.C. § 1985 ("section 1985") conspiracy claim alleges that the City,

18   Chief Dyer and Officers Castillo and Bowling "acted in concert and conspired to violate [Mr. Graham's]

19   federal civil rights to be free from excessive and/or arbitrary force." The section 1985 conspiracy claim

20   fails to identify which plaintiffs pursue it, and defendants presume that all plaintiffs pursue it.

21        Defendants attack the complaint's failure to plead a "valid conspiracy claim."

22        Section 1985(2) provides in pertinent part:

23        . . . if two or more persons conspire for the purpose of impeding, hindering, obstructing,
          or defeating, in any manner, the due course of justice in any State or Territory, with intent
24        to deny to any citizen the **equal protection of the laws**, or to injure him or his property
          for lawfully enforcing, or attempting to enforce, the right of any person, or class of
25        persons, to the **equal protection of the laws**;  (Bold added.)

26        Section 1985 addresses conspiracies to interfere with certain civil rights. The "equal protection"

27   language of the second clause (state courts) of section 1985(2) requires "an allegation of class-based

28   animus for the statement of a claim under that clause." *Portman v. County of Santa Clara*, 995 F.2d

                                        13

898, 909 (9th Cir. 1993) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th Cir.1985)).  "Congress

intended the act [section 1985(2)] to apply only in cases where there was racial or class-based animus."

*Kimble v. D. J. McDuffy, Inc.,* 648 F.2d 340, 347 (5th Cir.), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687

(1981); *see Lopez v. Arrowhead Ranches*, 523 F.2d 924, 928 (9th Cir. 1975) (limitation to "cases in

which a deprivation of equal rights is actionable to those where the injury is class motivated").

Defendants note the absence of "allegations of class-based animus" to doom a section 1985(2)

claim.

Defendants are correct.  The complaint makes no reference to a racial or class-based animus to

preclude a section 1985(2) claim.  Plaintiffs offer nothing to support a section 1985(2) claim.

Defendants further contend that the complaint fails to plead a viable section 1985(3) claim.[6]

"To state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to

deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and

(4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United

States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).  "To bring a cause of action successfully

under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by some racial, or

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK*

*Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (internal quotations omitted).

---

[6]    Section 1985(3) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

14

Congress did not intend to create a general federal tort law by the passage of section 1985(3). *Western Telecasters, Inc. v. California Federation of Labor, AFL-CIO*, 415 F.Supp. 30, 33 (S.D. Cal. 1976.) "[T]o effectuate the intent of Congress, the conspirators must be motivated by a class-based, invidiously discriminatory animus." *Western Telecasters*, 415 F.Supp. at 33 (section 1985(3) should not be interpreted to encompass all discrimination between classes of persons, and a claim of discrimination against employees of a non-union entity does not allege an invidiously, discriminatory animus and is not actionable under section 1985(3)).

Defendants challenge the complaint's absence of facts to indicate "the period of the conspiracy," the conspiracy's "specific object," actions to further the alleged conspiracy, and "a meeting of the minds between any of the defendants."

A section 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) (quoting *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)).

A section 1985(3) claim "must set forth facts showing some intentional and purposeful deprivation of constitutional rights." *See Powell v. Workmen's Compensation Bd. of State of N. Y.*, 327 F.2d 131, 137 (2nd Cir. 1964). A section 1985(3) plaintiff is "bound to do more than merely state vague and conclusory allegations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Powell*, 327 F.2d at 137; *see Grigsby v. Kane*, 250 F.Supp.2d 453, 458 (M.D. Pa. 2003). "[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." *Grigsby*, 250 F.Supp.2d at 458. A conspiracy occurs only when the parties have reached "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10, 66 S.Ct. 1125, 1138 (1946).

The complaint merely alleges a conspiracy to violate Mr. Graham's "civil rights to be free from excessive and/or arbitrary force." The complaint claims that members of the Department, including Officers Castillo and Bowling, "have individually and/or while in concert with one another, engaged in a repeated pattern and practice of making improper detentions and/or false arrests using excessive, arbitrary and/or unreasonable force."

Similar to a section 1985(2) claim, a section 1985(3) is not present given the absence of allegations of deprivation of a right motivated by racial or other class-based animus. The complaint does not hint of racial or other class-based discrimination. Putting aside animus, the complaint lacks specific facts of existence of the claimed conspiracy. There are no particularized allegations as to the alleged conspiracy's timing, duration, or object. Similarly, there are no allegations of actions taken to further the alleged conspiracy. A section 1985 conspiracy claim fails in the absence of particularized allegations as to a unity of purpose, common design and understanding, and meeting of minds in an unlawful arrangement. The section 1985 claim is subject to dismissal with prejudice given plaintiffs' failure to attempt to support a section 1985 claim.

## **Wrongful Death – Section 1983**

The complaint's (fourth) section 1983 wrongful death claim alleges that defendants' fatal shooting of Mr. Graham and subjecting Mr. Graham to excessive force deprived plaintiffs' rights:

1. "[T]o be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments";

2. "[N]ot to be deprived of life or liberty without due process of law, as guarantied [sic] by the Fourth, Fifth, and Fourteenth Amendments";

3. "[T]o be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments"; and

4. "[T]o be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments."

The section 1983 wrongful death claim fails to identify which plaintiffs pursue it, and defendants presume that all plaintiffs pursue it against all defendants.

/ / /

16

### *Fourth Amendment*

Defendants seek to dismiss the section 1983 wrongful death claim to the extent it is pursued by or on behalf of Mr. Graham for unreasonable searches and seizures and excessive force "because such claims are personnel [sic] and may not be vicariously asserted."

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide of analyzing these claims.'" *Albright*, 510 U.S. at 273, 114 S.Ct. at 813 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989)). "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier,* 520 U.S. 259, 272, n. 7, 117 S.Ct. 1219 (1997). "An excessive use of force claim arising out of an arrest must be analyzed under the Fourth Amendment, rather than the Fifth or Fourteenth Amendments." *Conley v. City of Lorain*, 1999 WL 1021650, at *1 (6th Cir. 1999).

Defendants construe the section 1983 wrongful death claim as one under the Fourth Amendment's reasonableness standard and thus redundant of the complaint's (first) section 1983 excessive force claim. Defendants seek to dismiss the section 1983 wrongful death claim to the extent its pursues a Fourth Amendment violation.

Defendants are correct that the a section 1983 wrongful death claim under the Fourth Amendment is redundant and inadequately pled to warrant dismissal with prejudice, especially given plaintiffs' failure to support such a claim.

### *Fifth Amendment*

Defendants contend that the section 1983 wrongful death claim cannot pursue a Fifth Amendment violation because defendants are not "federal actors."

"The Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only to actions of the federal government – not to those of state or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (Fifth Amendment claims against non-federal actors properly dismissed); *see Scott v. Clay County, Tenn.*, 205 F.3d 867, 873, n. 8 (2000) ("Fifth

17

Amendment's Due Process Clause circumscribes only the actions of the federal government).

In the absence of allegations that defendants are federal actors, plaintiffs lack Fifth Amendment claims against defendants to warrant dismissal with prejudice of claims resting on the Fifth Amendment.

### *Zone Of Privacy*

Defendants argue that the section 1983 wrongful death claim fails to "implicate the Fourth and Ninth Amendments" in the absence of "facts to identify what 'zone of privacy' was interferred with or which Plaintiff or Plaintiffs were subjected to such interference.

In *In re Crawford*, 194 F.3d 954, 958 (9th Cir. 1999), *cert. denied*, 528 U.S. 1189, 120 S.Ct. 1244 (2000), the Ninth Circuit addressed "zone of privacy":

> While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional "zone of privacy," its existence is firmly established. *See, e.g., Whalen v. Roe*, 429 U.S. 589, 599-600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Griswold v. Connecticut*, 381 U.S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). We have observed that the relevant Supreme Court precedents delineate at least two distinct kinds of constitutionally-protected privacy interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Doe v. Attorney General*, 941 F.2d 780, 795 (9th Cir.1991) (quoting *Whalen*, 429 U.S. at 599-600, 97 S.Ct. 869).

The complaint fails to identify a zone of privacy to warrant dismissal with prejudice of section 1983 wrongful death claims based on such theory and the Fourth and Ninth Amendments.

### *Fourteenth Amendment Substantive Due Process*

Defendants contend that the complaint's conclusory allegations fail to support a substantive due process claim under the Fourteenth Amendment.

"The concept of 'substantive due process,' semantically awkward as it may be, forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).  The substantive component of the Due Process Clause is violated by executive action only when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 1070 (1992).

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."  *Albright*, 510 U.S. at 272,

114 S.Ct. at 812.    The Fourteenth Amendment's due process clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S.Ct. 2258 (1997).  "[R]ecent jurisprudence restricts the reach of the protections of substantive due process primarily to liberties 'deeply rooted in this Nation's history and tradition.'"  *Armendariz v. Penman*, 75 F.3d 1311, 1319 (9th Cir. 1996) (quoting *Moore v. City of East Cleveland, Oh.*, 431 U.S. 494, 503, 97 S.Ct. 1932, 1937 (1977)).  "Thus, the Fourteenth Amendment protects against a State's interferences with 'personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education,' as well as with an individual's bodily integrity." *Armendariz*, 75 F.3d at 1319 (quoting *Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 2807 (1992)).

"There is no general liberty interest in being free from capricious government action." *Nunez*, 147 F.3d at 873.  Substantive due process does not protect individuals from all governmental actions that infringe liberty in violation of some law. *Santiago de Castro v. Medina*, 943 F.2d 129, 130-131 (1st Cir. 1991).    Courts must resist the temptation to augment the substantive reach of the Fourteenth Amendment, "particularly if it requires redefining the category of rights deemed to be fundamental." *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 2341 (1989).

"[N]egligent infliction of bodily injury . . . does not constitute a deprivation of any interest protected by the Due Process Clause." *Daniels v. Williams*, 474 U.S. 327, 329, 106 S.Ct. 662 (1986).  "In *Daniels*, we held that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property.  In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required." *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668 (1986).

However, "conduct intended to injure in some way unjustifiable by any governmental interest is the sort of official action most likely to rise to conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708 (1998).  Defendants note that conscience-shocking activity emphasizes "physical intrusion and brutality of police conduct, such as torture extracting a confession, or the forcible extraction of evidence."

The complaint's skeletal factual allegations fail to raise to conscience-shocking level.  The

complaint alleges an unjustified shooting and raises inferences more aligned with negligence than a substantive due process deprivation.  This Court resists the temptation to augment substantive due process under the minimally alleged facts.  As such, the (fourth) section 1983 wrongful death claim is subject to dismissal with prejudice.

## Familial Relationship

The complaint's (fifth) section 1983 familial relationship violation claim alleges that "Defendants . . . deprived Plaintiff [sic] of their right to a familial relationship by use of unreasonable, unjustified and deadly force and violence" to violate the First, Fourth and Fourteenth Amendments.  The section 1983 familial relationship violation claim fails to identify which plaintiffs pursue it, and defendants presume that all plaintiffs pursue it against all defendants.

### *First Amendment*

Defendants seek to dismiss the familial relationship claim to the extent based on the First Amendment in that the complaint fails to identify "as associational interest related to speech and petition."

The "freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. Such relationships may take various forms, including the most intimate." *Board of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 544, 107 S.Ct. 1940 (1987).  "Both parents and children of a decedent have been found to have a constitutionally protected liberty interest in their familial relationship under the Fourteenth Amendment." *Kim v. City of Santa Clara*, 2010 WL 2034774, at *6 (citing *Curnow By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991)). "It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." *Lee*, 250 F.3d at 685 (citation, alterations, and internal quotation marks omitted). The standard for such a violation is based on substantive due process. *Kim*, 2010 WL 2034774, at *6 (citing *Moreland v. Las Vegas Metropolitan Police Dep't*, 159 F.3d 365, 371 (9th Cir.1998)). However, the "freedom to associate guaranteed by the First Amendment protects associational interests related to speech and petition." *Thompson v. Ashe*, 250 F.3d 399, 407, n. 1 (6th Cir. 2001).

1    Defendants are correct that plaintiffs' familial interest differs from the First Amendment's

2    associational interest to warrant dismissal of the familial relationship claim to the extent based on the

3    First Amendment.  Plaintiffs' apparent reference to pleading "in the alternative" is unavailing and fails

4    to avoid dismissal with prejudice of a familial relationship claim based on the First Amendment.

5                                        ***Fourth Amendment***

6    Defendants argue that the Fourth Amendment does not provide support for a loss of familial

7    companionship claim.

8    "To prevail on a Fourteenth Amendment claim arising out of the loss of a familial relationship,

9    a plaintiff must show that the Defendant's conduct shocks the conscience. . . . What state of mind shocks

10   the conscience depends on the circumstances of a particular case."  *Provencio v. Vazquez*, 258 F.R.D.

11   626, 640 (E.D. Cal. 2009) (citing *Moreland*, 159 F.3d at 372); *see Kim*, 2010 WL 2034774, at *6.

12   Defendants contend that given courts' reliance on the Fourteenth Amendment to support a

13   familial relationship claim, plaintiffs cannot rely on the Fourth Amendment.

14   Plaintiffs offer no meaningful support to base a familial relationship claim on the Fourth

15   Amendment to warrant dismissal with prejudice of the familial relationship claim based on the Fourth

16   Amendment.  Plaintiffs' claim that the matter is "for the fact finder" is unavailing and fails to

17   substantiate a familial relationship claim based on the Fourth Amendment.

18   The familial relationship claim is limited to that based under the Fourteenth Amendment and

19   dismissed with prejudice to the extent based on the Fourth Amendment.

20                          ***Monell* Liability As To Chief Dyer**

21   The complaint's (sixth) section 1983 *Monell* claim accuses the City, Department and Chief Dyer

22   of creating "a custom, policy, pattern or practice" of making false reports, providing false and/or

23   misleading information, and using excessive and/or deadly force to result in constitutional deprivations.

24   Defendants argue that Chief Dyer is not liable in his individual capacity "unless there is some

25   affirmative link between Chief Dyer's actions and the claimed deprivation."

26   "Section 1983 creates a cause of action based on personal liability and predicated upon fault;

27   thus, liability does not attach unless the individual defendant caused or participated in a constitutional

28   deprivation."  *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct.

1822 (1997); *see Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.")  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation."  *Leer*, 844 F.2d at 633.  Section 1983 requires that there be an actual connection or link between the defendant's actions and the deprivation allegedly suffered.  *See Monell*, 436 U.S. 658, 98 S.Ct. 2018 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976).

A plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) (citing *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996)).  A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones*, 297 F.3d at 935.  "'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation."  *Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004).  Integral participation requires "some fundamental involvement in the conduct that allegedly caused the violation."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 481, n. 12 (9th Cir. 2007).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

In addition, Congress did not intend to "impose liability vicariously on [employers or supervisors] solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692, 98 S.Ct. at 2036.  Generally, supervisory personnel are not liable under section 1983 for actions of their employees under a respondeat superior theory, and thus, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged and proved.  *See Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2883 (1979).

To establish a prima facie case of supervisor liability, a plaintiff must show facts to indicate that

the supervisor defendant either: (1) personally participated in the alleged deprivation of constitutional rights; (2) knew of the violations and failed to act to prevent them; or (3) promulgated or implemented a policy "so deficient that the policy itself 'is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor*, 880 F.2d at 1045. A supervising official is liable in his individual capacity if he "set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (ratification, poor investigation, or failure to terminate series of events may make supervisor liable).[7]

Defendants hold plaintiffs to allege more than failure to reprimand to avoid Chief Dyer's dismissal. "The Ninth Circuit appears to require something more than a failure to reprimand to establish a municipal policy or ratification." *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1189 (D. Haw. 2003). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Defendants note the lack of facts to link Chief Dyer to Mr. Graham's shooting and to indicate that Chief Dyer had "'personal participation' in the events in question" given that the complaint targets Officer Castillo and Bowling's excessive force.

Plaintiffs claim that the complaint alleges that Chief Dyer:

1. Knew of a pattern of civil rights abuses by City police officers prior to Mr. Graham's shooting;

2. Knew of at least one prior incident of Officer Castillo's civil rights violations;

---

[7] The Ninth Circuit offered alternative elements to impose section 1983 liability on a supervisor: "'(1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Jeffers*, 267 F.3d at 915 (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991)). In *Phillips v. City of Fairfield*, 406 F.Supp.2d 1101, 1116 (E.D. Cal. 2005), a fellow judge of this Court observed: "For the court to hold defendant liable in his individual capacity, plaintiffs must demonstrate: (1) that defendant's 'own culpable action or inaction in the training, supervision, or control of his subordinates' caused the constitutional injury; (2) that the defendant 'acquiesce[d] in the constitutional deprivations of which [the] complaint is made;' or (3) that his conduct showed a 'reckless or callous indifference to the rights of others.' *See Larez*, 946 F.2d at 646 (internal citations omitted)."

1     3.      Covered up civil rights abuses of City police officers;

2     4.      Retaliated against officers who reported abuses;

3     5.      Promulgated deadly force policies that repudiated citizens' constitutional rights;

4     6.      Took no affirmative steps to terminate policies and practices on use of deadly force when

5              no basis exists for use of force;

6     7.      Has neither disciplined nor properly supervised officers who engaged in such policies

7              and practices; and

8     8.      Sanctioned policies and practices through deliberate and grossly negligent indifference

9              to residents' constitutional rights.

10 Plaintiffs argue that the "whole operation was conducted under the supervision of senior Fresno police

11 officers and ratified by Chief Dyer."

12      Plaintiffs amplify and stretch the complaint's allegations as to Chief Dyer.  The complaint's

13 common allegations accuse Chief Dyer of failure adequately to "train, supervise, and discipline [City]

14 police officers in the proper making of arrests and use of force" and to discipline Officers Castillo and

15 Bowling.  The complaint alleges that such failures demonstrate an "entrenched culture, policy or practice

16 of promoting, tolerating and/or ratifying with deliberate indifference the making of improper arrests and

17 use of excessive and/or deadly force and the fabrication of official reports" to cover up Officers Castillo

18 and Bowling's misconduct.

19      Defendants are correct that a complaint is judged based on its allegations, not new facts or claims

20 raised in F.R.Civ.P. 12(b)(6) opposition.  New allegations in opposition papers "are irrelevant for Rule

21 12(b)(6) purposes.  In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look

22 beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a

23 defendant's motion to dismiss." *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197, n.

24 1 (9th Cir. 1998) (italics in original).

25      The complaint alleges general failure of the City and Chief Dyer but fails to allege facts

26 predicated on fault that Chief Dyer caused or participated in a constitutional deprivation.  The complaint

27 lacks specific facts to link Chief Dyer's conduct and plaintiffs' alleged constitutional deprivations.

28 There are no specific facts that Chief Dyer knew of constitutional violations and failed to respond to

1  prevent them.  There are no specific facts that Chief Dyer promulgated or implemented a deficient policy

2  to repudiate constitutional rights.  The complaint's platitudes and generalities are insufficient to support

3  a *Monell* claim against Chief Dyer, and the complaint does not allege what plaintiffs claim.  Nonetheless,

4  out of an abundance of caution, this Court grants plaintiffs an attempt to amend a *Monell* claim against

5  Chief Dyer.

6  **Survival Action – Section 1983**

7      The complaint's (seventh) section 1983 survival claim, brought by Ms. Arres as personal

8  representative of Mr. Graham's estate, alleges that Mr. Graham "was forced to endure great conscious

9  pain and suffering" before his death and seeks to recover damages as such.

10     Reasserting their points in connection with the section 1983 excessive force claim, defendants

11  argue that L.G. and J.G., by guardian Ms. Fuentes, are proper plaintiffs to pursue Mr. Graham's survival

12  claims in the absence of allegations to identify Ms. Arres as executrix or administrator of Mr. Graham's

13  estate.  Defendants further contend that plaintiffs may not seek recovery for Mr. Graham's pain and

14  suffering.

15     California Code of Civil Procedure section 377.34 addresses damages recoverable by a

16  decedent's successor:

17          In an action or proceeding by a decedent's personal representative or successor
        in interest on the decedent's cause of action, the damages recoverable are limited to the
18      loss or damage that the decedent sustained or incurred before death, including any
        penalties or punitive damages or exemplary damages that the decedent would have been
19      entitled to recover had the decedent lived, and **do not include** damages for **pain,
        suffering**, or disfigurement.

20

21     Courts in this district bar survival claims for pain and suffering.  *Venerable v. City of

22  Sacramento*, 185 F.Supp.2d 1128, 1133 (E.D. Cal.2002) ("Because state law does not permit recovery

23  of a decedent's pain and suffering, [plaintiff's] claim for pain and suffering from injury leading to death

24  does not survive and will be dismissed); *Estate of Contreras ex rel. Contreras v. County of Glenn,* 725

25  F.Supp.2d 1151 (E.D. Cal. 2010); *Provencio v. Vazquez*, 2008 WL 3982063, at *12 (E.D. Cal. 2008)

26  (holding that pain and suffering claims are precluded because "the statutory scheme for survivors in

27  California still provides compensatory damages for the remaining injured parties, i.e. the survivors");

28  *Rosales v. City of Bakersfield*, 2007 WL 1847628 (E.D. Cal. 2007); *Whitfield v. State of California*, 2007

1   WL 496342 (E.D. Cal. 2007); *Moore ex rel. Moore v. County of Kern,* 2006 WL 2190753 (E.D.Cal.
2   2006); *Peacock v. Terhune,* 2002 WL 459810 (E.D. Cal. 2002).

3       This Court sees no grounds to undercut this district's trend to bar survival claims for a decedent's
4   pain and suffering.  Without legal support, the survival claim is subject to dismissal with prejudice, and
5   plaintiffs offer nothing to substantiate its viability.

6                                       **Claims Act Requirements**

7                              ***Timely Court Action After Claim Rejection***

8       The complaint alleges state law claims of wrongful death-negligence, intentional infliction of
9   emotional distress and assault and battery and violations of California Civil Code sections 51.7 ("section
10  51.7") and 52.1 ("section 52.1").[8]  Defendants challenge plaintiffs' Claims Act compliance to render the
11  state law claims time barred.

12      The Claims Act describes the specific steps which must be taken before a civil action for money
13  or damages may be brought against a public entity.  *Addison v. State of California,* 21 Cal.3d 313, 316,
14  146 Cal.Rptr. 224 (1978).  The Claims Act requires timely filing of a proper claim as condition
15  precedent to maintenance of an action.  Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written
16  claim to the applicable public entity is required before a "suit for money or damages may be brought
17  against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390,
18  94 Cal.Rptr. 73 (1971).  California Government Code section 911.2(a) provides: "A claim relating to
19  a cause of action for death or for injury to person . . . shall be presented . . . not later than six months
20  after the accrual of the cause of action.  A claim relating to any other cause of action shall be presented
21  . . . not later than one year after the accrual of the cause of action."

22      The claims procedures applicable to actions against public entities are the same for actions
23  against public employees.  Cal. Gov. Code, §§ 950-950.6.  Compliance with the claims statutes is
24  mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944).  Failure to file a claim
25  is fatal to the cause of action.  *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409
26  (1961).  "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation

27  _____

28          [8]      This Court will refer to the wrongful death-negligence, intentional infliction of emotional distress, assault
    and battery, and section 51.7 and 52.1 claims at the "state law claims."

requirement subjects a claim against a public entity to a demurrer [or dismissal] for failure to state a cause of action." *State v. Superior Court,* 32 Cal.4th 1234, 13 Cal.Rptr.3d 534, 538 (2004). A "plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *State v. Superior Court*, 32 Cal.4th at 1243, 13 Cal.Rptr.3d at 534. "Accordingly, submission of a claim within [six months] is a condition precedent to a tort action against either the employee or the public entity." *Williams v. Horvath*, 16 Cal.3d 834, 838,129 Cal.Rptr. 453 (1976).

Subdivision (a)(1) of California Government Code section 945.6 ("section 945.6") requires a claimant to file a civil action within six months after the public agency issues its decision. *Javor v. Taggart*, 98 Cal.App.4th 795, 804, 120 Cal.Rptr.2d 174 (2002). "The plain meaning of section 945.6, subdivision (a)(1), is that the statute of limitations therein begins to run when the written rejection notice is deposited in the mail to the claimant, or is personally delivered, but not when it is delivered by the postal employee after having been deposited in the mail pursuant to section 913." *Edgington v. County of San Diego*, 118 Cal.App.3d 39, 46, 173 Cal.Rptr. 225 (1981). The six-month period set forth in Section 945.6(a)(1) is mandatory and strict compliance is required. *Clarke v. Upton*, 703 F.Supp.2d 1037, 1044 (E.D. Cal. 2010).

Defendants contend that plaintiffs' filing this action on September 9, 2010, more than seven months after the City's claim rejection, renders the state law claims time barred.

Plaintiffs appear to contend that they are excused from timely filing of this action after the City's claim rejection. Plaintiffs point to California Government Code section 911.4(a) which permits a "written application" to a public entity for leave to present an untimely claim. However, defendants do not challenge timely claim submission to the City. Defendants challenge untimely filing of this action after claim rejection. Plaintiffs points regarding claim submission are irrelevant.

Defendants are correct that plaintiffs filed their complaint in this action more than six months after the City's claim rejection to warrant the state law claims untimely. Plaintiffs offer nothing to revive their untimely state law claims to warrant their dismissal with prejudice despite whether defendants may have been aware that plaintiffs possessed the state law claims. The Claims Act "must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455, 115 Cal.Rptr. 797 (1974).

27

1

***Claim Content – No Claim For Ms. Arres, L.G. And J.G.***

2      Defendants further seek dismissal of the state law claims on behalf of Ms. Arres, L.G. and J.G.

3  in the absence of government claim submitted for them to the City.  The City claims that it received a

4  government claim only for Mr. Graham's estate.

5      "[N]o suit for money or damages may be brought against a public entity on a cause of action for

6  which a claim is required to be presented . . . until a written claim therefor has been presented to the

7  public entity and has been acted upon . . . or has been deemed to have been rejected."  Cal. Gov. Code,

8  § 945.4.  California Government Code section 910 addresses the content of a government claim and

9  requires the claimant's "name and post office address," the "date, place and other circumstances of the

10  occurrence . . . which gave rise to the claim" and a "general description" of the "injury, damage, or loss

11  incurred so far as it may be known at the time of presentation of the claim."   The Claims Act bars

12  "actions alleging matters not included in the claim filed with the public entity." *State of California ex*

13  *rel Dept. of Transportation v. Superior Court,* 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984).

14      Defendants note that each claimant must file his/her own government claim and is unable to rely

15  another claimant's government claim.  *See Lewis v. City and County of San Francisco,* 21 Cal.App.3d

16  339, 341, 98 Cal.Rptr. 407 (1971) ("filing of a wrongful death claim by one heir for herself alone, even

17  though it similarly gives the public body full opportunity to investigate, does not excuse absence of a

18  claim by another heir"); *Petersen v. City of Vallejo*, 259 Cal.App.2d 757, 765-766, 66 Cal.Rptr. 776

19  (1968) (decedent's daughter could not rely on government claim of decedent's wife).  Defendants further

20  note that a wrongful death plaintiff is unable to rely on a decedent's government claim for personal

21  injury.  *Lewis,* 21 Cal.App.3d at 341, 98 Cal.Rptr. 407 ("An action for wrongful death is wholly distinct

22  from an action by the decedent, in his lifetime, for the injuries which ultimately cause his death.")

23      The California Court of Appeal has explained:

24      If a plaintiff relies on more than one theory of recovery against the [governmental agency
      or employee], each cause of action must have been reflected in a timely claim. In
25      addition, the factual circumstances set forth in the written claim must correspond with
      the facts alleged in the complaint; even if the claim were timely, the complaint is
26      vulnerable to a demurrer [or dismissal] if it alleges a factual basis for recovery which is
      not fairly reflected in the written claim.

27

28  *Fall River Joint Unified School Dist. v. Superior Court*, 206 Cal.App.3d 431, 434, 253 Cal.Rptr. 587

(1998) (brackets in original; citations omitted).

"Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity." *State of California ex rel Dept. of Transportation v. Superior Court,* 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984). "In other words, the factual content of the plaintiff's claim [is] viewed by the trial court as operating to proscribe the limits of any later action for which filing the claim is a precondition." *Williams v. Braslow*, 179 Cal.App.3d 762, 770, 224 Cal.Rptr. 895 (1986). Each "theory of recovery" must be reflected in a timely claim, and "the factual circumstances set forth in the claim must correspond with the facts alleged in the complaint." *Munoz v. State of California,* 33 Cal.App.4th 1767, 1776, 39 Cal.Rptr.2d 860 (1995).

The Claims Act is designed to protect governmental agencies from stale and fraudulent claims, to provide an opportunity for timely investigation, and to encourage settling meritorious claims. *Johnson v. San Diego Unified School Dist.*, 217 Cal.App.3d 692, 697, 266 Cal.Rptr. 187 (1990). Since the claims statutes should not be used as traps for the unwary when their underlying purposes have been satisfied, courts employ a test of substantial compliance, rather than strict compliance, in determining whether the plaintiff has met the filing requirements of the Claims Act. *Johnson*, 217 Cal.App.3d at 697, 266 Cal.Rptr. 187.

Nonetheless, the substantial compliance doctrine "cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." *Loehr v. Ventura County Community College Dist.,* 147 Cal.App.3d 1071, 1083, 195 Cal.Rptr. 576 (1983). "The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation." *Connelly v. County of Fresno*, 146 Cal.App.4th 29, 38, 52 Cal.Rptr.3d 720 (1988).

The record reveals only a government claim for Mr. Graham's estate to address his fatal shooting by Officers Castillo and Bowling. The government claim makes no mention of Ms. Arres, L.G., J.G. or Mr. Graham's successors. Ms. Arres, L.G. and J.G. are unable to rely on the estate's government claim. Moreover, the scope of the estate's government claim is limited to Mr. Graham's shooting death. As such, it does not address the state law claims which are theories of recovery beyond the government

1  claim presented to the City.

2      Additionally, "a cause of action against a public employee or former public employee for injury

3  resulting from an act or omission in the scope of his employment as a public employee is barred if an

4  action against the employing public entity for such injury is barred." Cal. Gov. Code, § 950.2.  Given

5  that the state law claims against the City are time barred, they are likewise barred against Chief Dyer and

6  Officers Castillo and Bowling despite plaintiffs' purported semantics of pursuing claims in alternative

7  individual capacity.

8      The state law claims are barred by failure to comply with the Claims Act and thus subject to

9  dismissal with prejudice.

10                          **Wrongful Death – Negligence**

11     L.G. and J.G. pursue the complaint's (eighth) wrongful death – negligence claim, which alleges

12  that "Defendants" proximately caused Mr. Graham's death "as a result of their negligent conduct and/or

13  negligent failure to act" to result in L.G. and J.G.'s "loss of comfort, society, attention, services, and

14  support of their father."

15     Although the wrongful death-negligence claim is barred for the reasons discussed above, this

16  Court addresses defendants' further grounds to dismiss the claim.

17                              *The City*

18     Defendants contend the City lacks negligence liability in the absence of a "statute providing for

19  such liability."

20     The Claims Act does not provide that a public entity is liable for its own conduct or omission

21  to the same extent as a private person or entity.  *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1128,

22  119 Cal.Rptr.2d 709, 722 (2002).  California Government Code section 815(a) provides that a "public

23  entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity

24  or a public employee or any other person," "[e]xcept as otherwise provided by statute."  Moreover, "a

25  public entity is not liable for an injury resulting from an act or omission of an employee of the public

26  entity where the employee is immune from liability," [e]xcept as otherwise provided by statute."  Cal.

27  Gov. Code, § 815.2(b).

28     Certain statutes provide expressly for public entity liability in circumstances that are somewhat

parallel to the potential liability of private individuals and entities, but the Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993); *see Becerra v. County of Santa Cruz*, 68 Cal.App.4th 1450, 1457, 81 Cal.Rptr.2d 165 ("in absence of some constitutional requirement, public entities may be liable *only* if a statute declares them to be liable"); *Michael J. v. Los Angeles County Dept. of Adoptions*, 201 Cal.App.3d 859, 866, 247 Cal.Rptr. 504  (1988) ("Under the Act, governmental tort liability must be based on statute; all common law or judicially declared forms of tort liability, except as may be required by state or federal Constitution, were abolished.")

A court first determines whether a statute "imposes direct liability" on a defendant public entity. *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1111, 16 Cal.Rptr.3d 521, 547 (2004).  "[D]irect tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of [California] Civil Code section 1714." *Eastburn v. Regional Fire Protection Authority*, 31 Cal.4th 1175, 1183, 80 P.3d 656 (2003).  "In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable. . . . [T]he practical effect of this section is to eliminate any common law governmental liability for damages arising out of torts." *Thompson v. City of Lake Elsinore*, 18 Cal.App.4th 49, 62, 22 Cal.Rptr.2d 344 (1993).

"[B]ecause under the Tort Claims Act all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable." *Lopez v. So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795, 221 Cal.Rptr. 840 (1985).  Thus, "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity." *Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 819,131 Cal.Rptr. 854 (1960)*.*  Moreover, "the plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity." *Keyes v. Santa Clara Valley Water Dist.*, 128 Cal.App.3d 882, 885, 180 Cal.Rptr. 586 (1982).

In addition, although "public entities always act through individuals, that does not convert a

1  claim for direct negligence into one based on vicarious liability." *Munoz*, 120 Cal.App.4th at 1113, 16

2  Cal.Rptr.3d 521.

3       Plaintiffs characterize the wrongful death – negligence claim to impose vicarious liability against

4  the City.  Plaintiffs note that "a governmental entity can be held vicariously liable when a police officer

5  acting in the course and scope of employment uses excessive force or engages in assaultive conduct."

6  *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 215, 814 P.2d 1341 (1991).  Plaintiffs point to California

7  Government Code section 815.2(a), which provides:

8       A public entity is liable for injury proximately caused by an act or omission of
     an employee of the public entity within the scope of his employment if the act or

9     omission would, apart from this section, have given rise to a cause of action against that
     employee or his personal representative.

10

11      Plaintiffs attempt to create vicarious liability where none is alleged.  The wrongful death-

12  negligence claim is premised on direct, not vicarious, liability.   "However, the Supreme Court clearly

13  did not adopt the view that because all entities, public and private, must act through individuals, that

14  suffices to establish direct liability. Indeed, the legal distinction between direct and vicarious liability

15  was the whole point and purpose of the *Eastburn* decision."  *Munoz*, 120 Cal.App.4th at 1113, 16

16  Cal.Rptr.3d 521.  The wrongful death-negligence claim alleges "Defendants . . . proximately caused the

17  death of decedent . . ."  Plaintiffs point to no allegations to support the City's vicarious liability.  The

18  complaint pleads no statutory basis to impose wrongful death-negligence liability on the City.  Plaintiffs

19  seek to impose liability on the City beyond that alleged or permitted by the Claims Act to further warrant

20  dismissal of the wrongful death-negligence claim against the City.

21                                    ***Chief Dyer***

22      Defendants fault the complaint's lack of allegations as to what legal duty Chief Dyer owned or

23  how he "personally breached the standard of reasonable care."

24      The elements of negligence are (a) a legal duty to use due care; (b) a breach of such legal duty;

25  and (c) the breach was the proximate or legal cause of the resulting injury.  *Ladd v. County of San*

26  *Mateo*, 12 Cal.4th 913, 917, 50 Cal.Rptr.2d 309 (1996).  "Liability for negligent conduct may only be

27  imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the

28  plaintiff is a member." *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 803, 157 Cal.Rptr. 407 (1979).  A duty

to the plaintiff is an essential element, which "may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 985, 25 Cal.Rptr.2d 550 (1993). The existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989).

The complaint's common allegations reference Chief Dyer's duty to "adequately hire, train, retain, supervise, and discipline" police officers. The complaint fails to distill how Chief Dyer owed such a duty to plaintiffs and breached it as to them.

Defendants further point to the absence of Chief Dyer's vicarious liability under California Government Code section 820.8, which provides that generally, "a public employee is not liable for an injury by the act or omission of another person."

The complaint lacks facts to support elements of a wrongful death-negligence claim against Chief Dyer or grounds to hold him vicariously liable to further warrant dismissal of the wrongful death-negligence claim against Chief Dyer.

**California's Bane Act**

The complaint's (ninth) claim for violation of section 52.1 alleges:

> Defendant's above-described conduct constitutes interference, and attempted interference, by threats, intimidation and coercion, with [Mr. Graham's] peaceful exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code § 52.1.

Defendants seek dismissal of the section 52.1 claim to the extent that Ms. Arres, L.G. and J.G. seek section 52.1 relief.

Section 52.1 permits a civil action against a person who interferes or attempts to interfere by threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and California Constitutions and laws. "Section 52.1(b) provides a cause of action to any person who has been denied rights under the laws of California." *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289, n. 13 (9th Cir. 2001), *cert. denied*, 537 U.S. 1098, 123 S.Ct. 816 (2003). The necessary elements for a section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional rights by threatening or committing violent acts; (2) that plaintiff reasonably believed that if she exercised her constitutional rights, defendants would commit violence against her property; (3) plaintiff

1    was harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm."

2    *Tolosko-Parker v. County of Sonoma*, 2009 WL 498099, at *5 (N.D. Cal. 2009).

3          The Ninth Circuit has described section 52.1 and similar California Civil Code sections 51.7 and

4    52(b) as "not 'hate crimes' statutes." *Winarto*, 274 F.3d at 1289. "[T]here is no requirement that the

5    violence be extreme or motivated by hate in the plain language of the sections, or in the cases construing

6    them; there is also no requirement that the act constitute a crime." *Winarto*, 274 F.3d at 1289. Section

7    52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form

8    of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844 (1998). "[N]othing in

9    Civil Code section 52.1 requires any showing of actual intent to discriminate." *Venegas v. County of*

10   *Los Angeles*, 32 Cal.4th 820, 842, 87 P.3d 1 (2004).

11         "Section 52.1 of the Civil Code guarantees the exercise or enjoyment by any individual or

12   individuals of rights secured by the Constitution or laws of the United States, or of the rights secured

13   by the Constitution or laws of this state without regard to his or her membership in a protected class

14   identified by its race, color, religion, or sex, among other things." *Venegas*, 32 Cal.4th at 841, 87 P.3d

15   1. Section 52.1's benefits are not restricted "to persons who are actual or perceived members of a

16   protected class. Such an interpretation could have anomalous results, permitting or disallowing recovery

17   based solely on the defendant's perceptions of the plaintiff's protected status." *Venegas*, 32 Cal.4th at

18   842-843, 87 P.3d 1.

19         Although section 52.1 was adopted "to stem a tide of hate crimes," *Jones*, 17 Cal.4th at 338, 70

20   Cal.Rptr.2d 844, section 52.1 is not limited to such crimes and does not require plaintiffs to demonstrate

21   "an actual hate crime," *Venegas*, 32 Cal.4th at 843, 87 P.3d 1; *see In re Joshua H.,* 13 Cal.App.4th 1734,

22   1748, fn. 9, 17 Cal.Rptr.2d 291 (1993) (the Bane Act and related statutes "are California's response to

23   [the] alarming increase in hate crimes"). Nonetheless, "section 52.1 does not extend to all ordinary tort

24   actions because its provisions are limited to threats, intimidation, or coercion that interferes with a

25   constitutional or statutory right." *Venegas*, 32 Cal.4th at 707, 87 P.3d 1. "[I]n pursuing relief for those

26   constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with

27   discriminatory animus or intent, so long as those acts were accompanied by the requisite threats,

28   intimidation, or coercion." *Venegas*, 32 Cal.4th at 708, 87 P.3d 1. A defendant is liable under section

52.1 "if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 882, 57 Cal.Rptr.3d 454 (2007).

"Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997). "The Bane Act is simply not a wrongful death provision. It clearly provides for a personal cause of action for the victim . . ." *Bay Area Rapid Transit Dist. v. Superior Court,* 38 Cal.App.4th 141, 145, 44 Cal.Rptr.2d 887 (1995). The Bane Act "is limited to plaintiffs who themselves have been the subject of violence or threats." *Bay Area Rapid Transit*, 38 Cal.App.4th at 145, 44 Cal.Rptr.2d 887.

Defendants are correct that since section 52.1 does not provide for "derivative liability," Ms. Arres, L.G. and J.G. are not entitled to 52.1 relief in absence of allegations that they are direct victims of conduct subject to section 52.1 to further warrant dismissal of the section 52.1 claim. Plaintiffs offer nothing to substantiate the section 52.1 claim.

### Section 51.7

The complaint's (tenth) claim alleges that Officers Castillo and Bowling's conduct "was motivated by prejudice" against Mr. Graham, a "recognizable Hispanic-American" to violate Mr. Graham's section 51.7 rights "to be free from violence, or intimidation by threat of violence committed against him because of his race."

Defendants attack the claim's failure to satisfy section 51.7 elements.

Section 51.7(a) provides:

> All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.

California Civil Code section 51(e)(5) identifies "race, color" among protected characteristics. As such, section 51.7 provides a civil remedy for hate crimes. *Ramirez v. Wong*, 188 Cal.App.4th 1480, 1486, 116 Cal.Rptr.3d 412 (2010).

Relying on a jury instruction, defendants hold plaintiffs to allege that:

1. Officers Castillo and Bowling threatened or committed a violent act against Mr. Graham or his property;

2. The motivating reason for Officers Castillo and Bowling's conduct was their perception of Mr. Graham's race/color;

3. Mr. Graham was harmed; and

4. Officer Castillo and Taylor's conduct was a substantial factor in causing Mr. Graham's harm.

*See* Judicial Council of California, Civil Jury Instructions (2010), CACI No. 3023A.

Section 51.7 "requires violence or a threat of violence; it is, after all, a 'hate crimes' statute. . . .There can be no 'threat of violence' without some expression of intent to injure or damage plaintiffs or their property, and there simply was none." *Ramirez*, 188 Cal.App.4th at 1486, 116 Cal.Rptr.3d 412.

Defendants fault the complaint's lack of facts that Officers Castillo and Bowling's "motivating reason" for their conduct was Mr. Graham's race in that the complaint merely alleges that Mr. Graham "is and was readily recognizable Hispanic-American." Defendants point to the absence of allegations that Officers Castillo and Bowling engaged in intentional discrimination or "utilized racially motivated remarks, jokes, and/or stereotypes during any interaction" with Mr. Graham.

The complaint lacks facts that Officers Castillo or Bowling engaged in "violence, or intimidation by threat of violence" based on Mr. Graham's race. Mr. Graham offers no meaningful opposition to suggest otherwise. Defendants correctly note the absence of allegations that Officers Castillo and Bowling engaged in racial remarks, jokes or stereotypes. Defendants are correct that plaintiffs may not rely on the sole conclusory allegation that Officers Castillo and Bowling's conduct was "because of his race" to bolster dismissal of the section 51.7 claim. Plaintiffs point to nothing to attempt to invigorate a section 51.7 claim.

**Intentional Infliction Of Emotional Distress**

The complaint's (eleventh) intentional infliction of emotional distress ("IIED") claim alleges that "above-described conduct was extreme, unreasonable and outrageous" and "defendant intentionally ignored or recklessly disregarded the foreseeable rick [sic] that decedent would suffer extreme emotional

36

distress as a result of Defendants' conduct." The claim identifies no particular defendant or plaintiff, and defendants presume that all plaintiffs pursue the claim against all defendants.

Defendants initially note that if the IIED claim is a survival action, only Mr. Graham's personal representative or successor in interest could pursue the claim, as discussed above.  Defendants fault the absence of facts to support IIED elements.

The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct and the emotional distress.  *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*;Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).[9]  The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)).  Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an IIED claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991).  The defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result."  *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550 (1993).  The California Supreme Court has further explained:

---

[9]        Other California courts have identified the elements as "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct."  *Cochran v. Cochran*, 65 Cal.App.4th 488, 494, 76 Cal.Rptr.2d 540 (1998) (citing *KOVR-TV, Inc. v. Superior Court,* 31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431 (1995)).

"The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." *Berkley v. Dowds,* 152 Cal.App.4th 518, 534, 61 Cal.Rptr.3d 304 (2007). There is no bright line standard for judging outrageous conduct, and a case-by-case appraisal of conduct is required. *Cochran v. Cochran*, 65 Cal.App.4th 488, 494, 76 Cal.Rptr.2d 540 (1998).

Morever, "'severe emotional distress' means highly unpleasant mental suffering or anguish 'from socially unacceptable conduct' . . . , which entails such intense, enduring and nontrivial emotional distress that 'no reasonable [person] in a civilized society should be expected to endure it.'" *Schild v. Rubin*, 232 Cal.App.3d 755, 762-763, 283 Cal.Rptr. 533 (1991) (citations omitted).

Defendants fault the complaint's lack of alleged facts of defendants' specific extreme conduct and Mr. Graham's severe or extreme emotional distress.

Defendants are correct that the IIED claim may not rest on a conclusory allegation of "extreme, unreasonable and outrageous" conduct. The complaint alleges that Officers Castillo and Bowling unjustifiedly shot Mr. Graham to death when he posed no threat of harm. The complaint's allegations raise no inferences that defendants' conduct was so severe and outrageous to meet IIED levels, and plaintiffs do not claim so. Moreover, there is an absence of allegations to describe plaintiffs or Mr. Graham's emotional distress, and nothing indicates that purported emotional distress was severe or extreme to support a necessary element of an IIED claim to further warrant dismissal of the IIED claim.

**Assault And Battery**

The complaint's (twelfth) claim alleges that defendants' "conduct constituted assault and battery." The assault and battery claim identifies no particular defendant or plaintiff, and defendants

38

presume that all plaintiffs pursue the claim against all defendants.

Defendants fault the assault and battery claim's failure to allege necessary elements and facts as to "what each named defendant did" to satisfy minimal pleading requirements.  Relying on a jury instruction, defendants hold plaintiffs to allege that:

    1.    Officers Castillo and Bowling intentionally touched Mr. Graham;

    2.    Officers Castillo and Bowling used unreasonable force to detain Mr. Graham;

    3.    Mr. Graham did not consent to Officers Castillo and Bowling's use of force;

    4.    Mr. Graham was harmed; and

    5.    Officers Castillo and Bowling's use of unreasonable force was a substantial factor in causing Mr. Graham's injuries.

*See* Judicial Council of California, Civil Jury Instructions (2010), CACI No. 1305.

Police officers are not "similarly situated to the ordinary battery defendant and need not be treated the same." *Munoz,* 120 Cal.App.4th at 1109, 16 Cal.Rptr.3d 521.  In a battery action against a peace officer, the plaintiff "must prove unreasonable force as an element of the tort." *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272, 74 Cal.Rptr.2d 614 (1998).  "A police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance." *Edson*, 63 Cal.App.4th at 1272-1273, 74 Cal.Rptr.2d 614 (citing Cal. Pen. Code, § 835a)).  A "prima facie battery is not established unless and until plaintiff proves unreasonable force was used." *Edson*, 63 Cal.App.4th at 1273, 74 Cal.Rptr.2d 614.  Peace officers "act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties, because 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Edson*, 63 Cal.App.4th at 1273, 74 Cal.Rptr.2d 614 (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871-1872).

Moreover, "[b]attery includes assault; in fact, battery is a consummated assault.  Assault is, therefore, necessarily included in battery." *People v. Heise*, 217 Cal. 671, 673, 20 P.2d 317 (1933).

Defendants are correct that the complaint leaves them to guess which defendant did what to support an assault and battery claim.  The complaint's conclusory allegations of excessive force fail to raise inferences that Officers Castillo and/or Bowling used unreasonable force to make an arrest, prevent

1    escape or overcome resistance and needed to desist in the face of no resistance.  The assault and battery

2    claim's conclusory nature further warrants its dismissal.

3    **Amended Complaint**

4         This Court has enumerated numerous deficiencies with the complaint.  Out of an abundance of

5    caution, this Court grants plaintiffs limited leave to amend certain claims dismissed without prejudice.

6    If plaintiffs elect to amend such claims, this Court ADMONISHES plaintiffs to cure the deficiencies,

7    support the claims with sufficient facts consistent with the principles discussed above, and refrain to

8    pursue claims which lack factual or legal support.  An amended complaint must not include claims

9    which have been dismissed with prejudice.  An amended complaint must identify which plaintiffs pursue

10   particular claims against specifically identified defendants.

11   **CONCLUSION AND ORDER**

12        For the reasons discussed above, this Court:

13        1.    DISMISSES with prejudice the Department;

14        2.    DISMISSES with prejudice the section 1983 claims against Chief Dyer and Officers

15              Castillo and Bowling in their official capacities;

16        3.    DISMISSES with prejudice punitive damages claims against the City;

17        4.    DISMISSES without prejudice the (first) section 1983 claim for Fourth Amendment

18              violation and GRANTS plaintiffs leave to amend to allege facts as to whether Ms. Arres

19              or L.G. and J.G., through Ms. Fuentes, are entitled to pursue a survival action for Mr.

20              Graham;

21        5.    DISMISSES without prejudice the (second) section 1983 medical indifference claim;

22        6.    DISMISSES with prejudice the (third) section 1985 conspiracy claim;

23        7.    DISMISSES with prejudice the (fourth) section 1983 wrongful death claim;

24        8.    DISMISSES with prejudice the (fifth) section 1983 familial relationship claim to the

25              extent based on violation of the First and/or Fourth Amendments;

26        9.    DISMISSES without prejudice the (sixth) *Monell* claim against Chief Dyer;

27        10.   DISMISSES with prejudice the (seventh) section 1983 survival claim;

28        11.   DISMISSES with prejudice the state law claims;

12.    ORDERS plaintiffs, no later than February 11, 2011, to file and serve either: (a) a first amended complaint which satisfies F.R.Civ.P. 8, other pleading requirements, and this order, and which identifies which particular plaintiffs pursue particular claims against which identified defendants; or (b) a statement that plaintiffs elect not to attempt to amend claims dismissed without prejudice and to proceed on the complaint's remaining claims;

13.    ORDERS defendants, no later than March 3, 2011, file and serve either: (a) a response to plaintiffs' first amended complaint; or (b) an answer to the original complaint, if plaintiffs file no amended complaint; and

14.    DIRECTS the clerk to enter judgment in favor of defendant Fresno Police Department and against plaintiffs Teresa Arres, the Estate of Lonnie Graham, Benicia Fuentes, L.G. and J.G. in that there is no just reason to delay to enter such judgment given that plaintiffs' remaining claims and alleged liability of remaining defendants are clear and distinct from claims against and liability of the Department.  *See* F.R.Civ.P. 54(b).

In sum, the complaint's surviving claims are limited to:

1.    The (first) section 1983 excessive force claim **subject to amendment** to allege facts as to whether  Ms. Arres or L.G. and J.G., through Ms. Fuentes, are entitled to pursue a survival action for Mr. Graham;

2.    The (second) section 1983 medical indifference claim **subject to amendment**;

3.    The (fifth) section 1983 familial relationship claim based only under the Fourteenth Amendment; and

4.    The (sixth) *Monell* claim, however, as to Chief Dyer the claim is **subject to amendment**.

IT IS SO ORDERED.

Dated:    __January 26, 2011__                    _____/s/ Lawrence J. O'Neill_____
                                                            UNITED STATES DISTRICT JUDGE

41